UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>MICHAEL TIMBROOK )<br>)<br>Defendant. )<br>_____ ) | No.   21-cr-361 (TNM) |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Michael Timbrook, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Mr. Timbrook is a 57 year old dedicated husband and father. He traveled to Washington, D.C. with the sole intention of supporting his political beliefs. He went alone and was not involved in any pre-planning, did not engage in any aggressive behavior, and left the Capitol building after 25 minutes.

When Mr. Timbrook returned home to Tennessee, he voluntarily submitted to an interview with the Federal Bureau of Investigation (FBI), where he admitted to his conduct with no hesitation. Ever since January 6, 2021, Mr. Timbrook has been working hard as a foreman for a construction company in order to provide for his family. He was arrested in April 2021 for the instant offense and has been compliant with his conditions of pre-trial release ever since.

Based on Mr. Timbrook's role in the offense, his background and history, and his compliance on supervision for over a year, he respectfully requests that the Court impose a period of probation and to reject the government's request for a

1

disparate and illegal sentence. *See* Government Sentencing Memo, ECF No. 37 (Gov. Memo).

## BACKGROUND

Mr. Timbrook entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for his participation in the events on January 6, 2021. Mr. Timbrook did not participate in any violence, destruction or theft of property, and did not have any negative confrontations with law enforcement while entering or exiting the building.[1] Mr. Timbrook will appear for sentencing on May 20, 2022. He has reviewed the Pre-Sentence Investigation Report and does not have any further objections to its contents.

## ARGUMENT

I. **Legal Standard**

---

[1] The government in its sentencing memorandum has suggested that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, they would be charged with felony offenses. *See* Gov't Sent. Memo at 25. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior. *See United States v. Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Stotts*, 21-CR-272 (TJK) (court imposed two months' home detention despite Stotts shouting at police and scaling wall to gain access to Capitol).

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

II. **Imposing a Period of Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

   a. **Mr. Timbrook's Personal History and Characteristics**

Mr. Timbrook was born into a middle class family in Louisiana as the middle child of three siblings. His father worked for Pepsi and so his family moved around quite a bit during his childhood. His adolescent years were spent in Massachusetts, where he graduated from high school. After spending six months in university, Mr. Timbrook decided to leave school and enter the work force. Over the years, he has had various jobs, most recently finding his passion in construction. Mr. Timbrook

lived in North Carolina and Florida before finally settling in his current home in Tennessee.

Mr. Timbrook has been married for 24 years and has three adult daughters, the youngest of which works with him at his company. He has a close relationship with his family and his wife describes him as an "honest, dependable, faithful, caring and hardworking man." *See* PSR ¶37. His wife also describes him as an "excellent father" and a good provider. *Id*.

It is especially notable that Mr. Timbrook works hard in a position that requires constant manual labor even though he suffers from high blood pressure and severe sleep apnea. It is clear that his love for his family and wish to provide for them is his highest priority.



Mr. Timbrook traveled to Washington, D.C. on January 6, 2021, alone. His only intention was to support his political beliefs and had no prior intention of entering the Capitol building.

### b. Nature and Circumstances of the Offense

Mr. Timbrook drove to Washington, D.C. on January 5, 2021, and arrived at about 8:00 PM. He felt that by going to D.C. to protest the certification of the 2020 Presidential election that he was being patriotic. He felt a duty to his country to stand up against what he thought and what thousands of others thought was a fraudulent election. When he arrived on January 5, 2021, Mr. Timbrook slept in his truck after meeting a couple of men who had traveled from Georgia. The next morning, Mr. Timbrook met up with the two men he met the night before and they walked to the rally together. After listening to speeches, Mr. Timbrook observed a large crowd marching to the Capitol building. He followed the crowd and entered the building through the Senate Wing Door, which had already been breached before he arrived. He was never aggressive towards officers and was inside the building for about 25 minutes. After returning home to Tennessee, the FBI visited his home and he told them that he was willing to accept the penalty for what he did on January 6, 2021. He then proceeded to give the FBI a detailed and honest account of his actions, incriminating himself without a lawyer present. When arrested on April 20, 2021, Mr. Timbrook gave the officers full consent to search his phone.

The government, in its 45 page sentencing memorandum, exaggerates Mr. Timbrook's actions on January 6, 2021 by speculating his intent through a series of video exhibits and making inaccurate claims. *See* Gov. Memo. at 1-23. First, the government claims that Mr. Timbrook watched an assault of an officer and did not

attempt to assist. *Id.* at 18-19 (citing Government Exhibit 18). However, when reviewing the video, that is simply incorrect. Before the assault occurs, Mr. Timbrook first picks up Capitol building property that was knocked over by others and places it upright. *See* Government Exhibit 18, second 50-55. Then, as the assault is occurring, Mr. Timbrook moves over to the officer and places his body in the way of other rioters who are moving towards the officer aggressively and places his arm up in front of a rioter getting him to stand back. It is clear by his actions that he is trying to protect any further damage to the officer and that he does not support any violence or destruction of property. *Id.* at minute 1:10-1:15.

In fact, the government traces Mr. Timbrook from the minute he steps onto the Capitol grounds to the minute he leaves the building and not once does Mr. Timbrook display an ounce of aggression. Rather, he calmly followed the crowd. Mr. Timbrook admits that by simply following the crowd he was still contributing to the overall riot, however he never contributed directly to the chaos or "helped" to breach a police line as the government falsely asserts.

Lastly, the government incorrectly asserts that Mr. Timbrook has not expressed any remorse following his illegal conduct because of a couple statements he posted on Facebook on January 11 and February 9, 2021. *See* Gov. Memo at 21-22. However, those statements were made close in time to January 6, 2021, and made as a result of frustration because of the brutal criticism he endured by the media and horrible comments from random strangers on social media condemning his actions. One individual even commented saying, "I hope you die in prison." Mr.

Timbrook reacted to all of this trying desperately to defend himself and tried to explain what led to that day and why he felt like it was an act of civil disobedience that he believed was right at the time. However, once the dust settled and Mr. Timbrook was able to step back and assess his actions, he was able to take responsibility and accept that his role was serious and should never be repeated. That is why Mr. Timbrook entered a guilty plea and made a statement to probation expressing his remorse and explaining that he has learned his lesson. *See* PSR ¶19. To claim that Mr. Timbrook is not remorseful is too simplistic and does not take into account the entire picture of what has transpired in the last year.

Ever since Mr. Timbrook made those statements, Mr. Timbrook has distanced himself from the events and has been focusing on his work and family. His family describes him as a "kind-hearted, devoted father and Christian." *See* Exhibit 1, Letter from Tamara Whetsel. Mr. Timbrook's pastor also wrote to the Court describing him as a "trusted member of the congregation." *See* Exhibit 2, Letter from Pastor Bryant Owens. He also sincerely explains:

> His love for his family is unquestionable. I witness Mike's sacrifice for his family when he must travel for work, providing for their every need. But most importantly, I see Mike's humility. He does not demand his own way. He does not demand that others conform to his way of thinking or doing.

*Id.*

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

The request for a period of probation acknowledges the need to promote respect for the law and provide just punishment. Mr. Timbrook has already been sufficiently deterred from future similar conduct. Not only has his liberty already been restricted from being on supervision for over a year, but he has also been heavily scrutinized by the media and random members of the public. Based on his compliance with supervision and lack of criminal history, Mr. Timbrook risk to re-offend is almost non-existent.[2]

Furthermore, a period of probation is in line with similar past sentences imposed. Although there is no case exactly alike, Mr. Timbrook's conduct is more in line with defendants who received periods of probation rather than periods of incarceration. For example, in *United States v. Danielle Doyle*, 1:21-CR-324 (TNM), the court imposed a sentence of 2 months' probation. Like Mr. Timbrook, the defendant in that case also entered through the Senate Wing Door at around the same time, was in the building for approximately 25 minutes, and left with no acts of aggression. In *Doyle*, the government also alleged that Ms. Doyle witnessed and photographed the violence and destruction that day.

This case is also similar to *United States v. Jenny Cudd*, 1:21-CR-068 (TNM), where the court rejected a similarly excessive government recommendation and imposed a sentence of 2 months' probation. In *Cudd*, the government alleged that the defendant watched and filmed the chaos and destruction while at the Capitol

---

[2] Mr. Timbrook has one prior petty offense when he was 30 years old, 27 years ago.

building and was not remorseful afterwards.[3]  Ms. Cudd was also well respected in her community, was compliant on pre-trial release, and had no criminal history.

The government's request for 90 days of incarceration followed by three years of probation would result in a disparate sentence if imposed.  This case can be easily distinguished from the cases the government provides to support its excessive request.  For example, in *United States v. Andrew Erickson*, 21-cr-506 (TNM), the Court imposed a sentence of 24 months' probation with the condition that he serve 20 days of intermittent confinement.  However, the government made more serious allegations in that case, such as (1) the defendant cheering while witnessing the chaos in the Capitol building, (2) putting his feet up on a desk in an office that had been destroyed while drinking a beer, (3) and not being fully compliant with his conditions of release.  Mr. Timbrook's conduct is also not similar to the alleged conduct in *U.S. vs. Erik Rau*, 1:21-cr-467 (JEB) and *U.S. vs. Derek Jancart*, 1:21-cr-148 (JEB), where the court imposed 45 days of incarceration but where the defendants entered guilty pleas to a different offense, 40 U.S.C. §5104(e)(2)(D), Disorderly Conduct.  In those cases, the government alleged that the defendants encouraged and incited violence.  It is also notable that the Court rejected the government's request in those cases for a sentence of four months' incarceration.[4]

---

[3] *See also United States v. Sean Cordon, 21-cr-269 (TNM) (*sentenced to 2 months' probation*); United States v. Eliel Rosa, 21-cr-68 (TNM) (*sentenced to 12 months' probation*); United States v. Julia Sizer*, 1-21-CR-621 (CRC) (sentenced to 12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (sentenced to 12 months' probation).
[4] This case is also not comparable to the remaining cases the government provides.  *See U.S. v. Register*, 1:21-cr-349 (TJK) (defendant sentenced to 75 days' incarceration after government alleged he lied to FBI and deleted evidence); *U.S. vs. Frank Scavo*, 1:21-cr-254 (RCL) (sentenced to 60 days' incarceration after government alleged he filmed people

The government has no justification for requesting that the Court impose the harshest sentence for a petty offense capitol case misdemeanor to date. The closest that this district court has come to imposing such a sentence was in *U.S. v. Jeffrey Smith*, 1:21-cr-290 (RBW), where the court imposed 90 days' incarceration followed by 24 months' probation for a petty offense after the government alleged that the defendant let in a mob of rioters being held back by a locked door while police were trying to prevent him from doing so.

Lastly, in addition to specific deterrence, general deterrence has also been served. The whole world has already observed the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge. The advancement of technology and the rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. Given the global pandemic and the need to conduct hearings via video conference, the world has been able to listen to what happens to defendants on a public call in line. There is no doubt that general

---

assaulting officers while posting on social media, "its going down" and "Mike Pence is out of the Capitol"); *U.S. vs. Little*, 1:21-cr-315 (RCL) (defendant sentenced to 60 days' incarceration followed by 36 months' probation after the government alleged he made it all the way to the Senate Gallery and alleged that he had a YouTube channel where he threatened civil war and gun violence against political opponents); *U.S. v. William Tyron*, 1:21-cr-420 (RBW) (defendant sentenced to 50 days' incarceration after he entered guilty plea to more serious misdemeanor and after the government alleged that he was hit by a police baton after refusing to comply with commands and allegedly told journalists his intention was to disrupt what Congress was doing); *U.S. v. Pham*, 1:21-cr-109 (TJK) (defendant, who was an active Texas police officer, sentenced to 45 days' incarceration after the government alleged he cheered inside the Capitol building saying, "We're taking our house back!").

deterrence has been served, especially in these cases where the public knows every detail and understands exactly what would happen to them if this behavior is ever repeated.

### III. A Sentence of Probation and Incarceration For a Petty Offense is Not Permitted

In its sentencing memorandum submitted to the Court, without any prior notice to the defendant in his plea agreement, the government now claims that Mr. Timbrook can be sentenced to a period of incarceration followed by a period of probation. *See* Gov. Memo at 35-44. Contrary to the government's assertion, the Court is not authorized to impose both a sentence of incarceration and a sentence of probation in this case, and doing so would raise significant constitutional concerns. 18 U.S.C. § 3551; *see United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125 (Chief Judge Howell chose to not impose such a sentence after briefing provided to the Court). The plea agreement nowhere indicates or notifies Mr. Timbrook that he may be subject to both 6 months of incarceration and 5 years of probation. A correct reading of the relevant statutes and the legislative history, as discussed in the defense pleadings in *Torrens*, make it clear that a district court has a dichotomous choice: it can either sentence the defendant to imprisonment up to six months, or it can sentence the defendant to probation for up to five years. Where, as here, there is solely one single petty offense, the statute precludes a combined probationary and a sentence of incarceration.

The only prior authority that is applicable, *United States v. Posley*, 351 F. App'x 801, 809 (4th Cir. 2009) (unpublished), misreads 18 U.S.C. § 3563(a)(3) and

11

ignores 18 U.S.C. § 3551(b).[5] The Office of the Federal Public Defender recently filed an Amicus brief in *U.S. v. Caplinger*, 21-CR-342 (PLF) that addresses these arguments in further detail. *See* ECF No. 53 attached as Exhibit 3. Mr. Timbrook adopts the same arguments made in *Caplinger* and requests that the Court reject the government's proposition that a petty offense can include a sentence of incarceration followed by a period of supervision.

The Office of the Federal Public Defender also recently submitted a supplemental brief in *U.S. vs. Dominick Madden*, 21-cr-55 (EGS) in order to address the memorandum opinion issued in U.*S. vs. Little*, 1:21-cr-315 (RCL), ECF No. 43, where the court justified its decision for imposing a split sentence. *See* Exhibit 4, Defense Supplemental Brief. For all of the same reasons discussed in those pleadings, a split sentence for a petty offense would be an illegal sentence.

## IV. Intermittent Time as a Condition of Probation is also Impermissible

The government suggests that the Court may impose one or more intervals of imprisonment as a condition or probation so long as it is a "brief period" of no more than a "week or two." *See* Gov. Memo at 43 (citing *U.S. v. Mize*, 1998 WL 160862). However, it is not permissible as it is unclear at what point an "interval of time" effectively becomes a "term of imprisonment" and therefore would constitute an

---

[5] It appears that the decision has not been cited by any court, according to a Lexis citing history search. Its analysis, issued on the papers without the benefit of oral argument, id. at 809, is inaccurate and not remotely persuasive for the reasons set forth in the pleadings in *Torrens*.

unauthorized sentence of both imprisonment and probation. Cf. 18 U.S.C. §3583(d) (term of intermittent confinement pursuant to §3563(b)(10) may be imposed only for a *violation* of condition of supervised release). A sentence of "intermittent confinement" as a condition of probation for a petty offense raises significant issues and potential constitutional issues. *See United States v. Voda*, 994 F.2d 149, 151 n.2 (5th Cir. 1993) ("Voda expressly waived any argument that imposition of sixty days' confinement served over sixty day period is "imprisonment," as opposed to intermittent confinement, and thus a violation of section 3562"); *United States v. Baca*, 2011 WL 1045104 (C.D. Cal. March 18, 2011) supra at *2 (45 day condition of confinement violates statute).

## CONCLUSION

For the reasons stated above, Mr. Timbrook respectfully requests that the Court impose a period of probation. Mr. Timbrook also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org

13